[Cite as *Brondes Ford Maumee Ltd. v. KJAMS, L.L.C.*, 2017-Ohio-4015.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Brondes Ford Maumee Ltd. d/b/a
Brondes Ford Lincoln of Maumee

      Appellee

v.

KJAMS, LLC d/b/a Steve Rogers Ford

      Appellant

Court of Appeals No. L-16-1210

Trial Court No. CI0201505050

**<u>DECISION AND JUDGMENT</u>**

Decided:  May 26, 2017

* * * * *

Glenn L. Rambo and Jay F. McKirahan, for appellee.

Christopher M. DeVito, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} Defendant-appellant, KJAMS, LLC d/b/a Steve Rogers Ford ("Rogers"),

appeals the August 5, 2016, and September 1, 2016 judgments of the Lucas County Court

of Common Pleas, denying its motion to dismiss, and granting summary judgment in

favor of plaintiff-appellee, Brondes Ford Maumee Ltd. d/b/a Brondes Ford Lincoln of Maumee ("Brondes"). For the following reasons, we reverse the trial court judgment.

## I. Background

{¶ 2} Brondes is a Ford dealership located in Maumee, Ohio, and Rogers is a Ford dealership located in nearby Waterville, Ohio. They are "franchisees" as defined in R.C. 4517.01(V). Ford is a "franchisor," as defined in R.C. 4517.01(W).

{¶ 3} Brondes sought approval from Ford to move its dealership from 1511 Reynolds Road to another Maumee location at Arrowhead Road and Indianwood Circle ("Arrowhead"). Before a franchisor may approve a request to relocate an existing new motor vehicle dealer to a location that is in the relevant market area where the same line-make of motor vehicle is already represented, the franchisor must provide notice to the Ohio Motor Vehicles Board ("the board"), as well as to each franchisee in the relevant market area. R.C. 4517.50(A). Affected franchisees may then file with the board a protest against the relocation. *Id.* The franchisor will be prohibited from relocating an existing new motor vehicle dealer within the relevant market area if, after a hearing, the board determines that there is good cause for not permitting the new motor vehicle dealer to be relocated. R.C. 4517.50(B).

{¶ 4} "Relevant market area" is defined by 4517.01(CC) as "any area within a radius of ten miles from the site of a potential new dealership, * * * measured from the dealer's established place of business that is used exclusively for the purpose of selling, displaying, offering for sale, or dealing in motor vehicles." Relocation of Brondes from

2.

Reynolds Road to Arrowhead would ordinarily trigger the R.C. 4517.50(A) notice requirement because the Rogers dealership is within 10 miles of the proposed Arrowhead location. But R.C. 4517.50(C) sets forth three exceptions to the notice requirement. Pertinent to the present appeal, one of those exceptions eliminates the notice requirement if the relocation site is within one mile from the franchisee's existing location. R.C. 4517.50(C)(1).

{¶ 5} Ford did not provide notice to Rogers of the proposed Brondes relocation because of its view that the relocation site was within one mile from Brondes' existing site. Rogers nevertheless learned of the proposed relocation and filed a protest with the board on October 5, 2015, on the basis that the "within one mile" exception was not met.

{¶ 6} Ford moved the board to dismiss Rogers' protest for lack of subject-matter jurisdiction. It argued that the board's jurisdiction was never invoked because it did not issue an R.C. 4517.50(A) notice due to the proximity of Arrowhead to Brondes' existing Reynolds Road location. Rogers countered that the Arrowhead property does not fall entirely within one mile from the Reynolds Road location, thus the R.C. 4517.50(C)(1) exception does not apply, and Ford was required to provide notice.

{¶ 7} The question of what constitutes "within one mile" for purposes of R.C. 4517.50(C)(1) was considered by the hearing examiner assigned to Rogers' protest. The hearing examiner adopted a "straight-line" approach whereby distance is measured from the closest point of the existing location to the closest point of the proposed location. Using that measurement, she found that Arrowhead was within one mile from the

3.

Reynolds Road location, thus Ford was not obligated to provide notice, and the Board lacked subject-matter jurisdiction. In an entry dated April 25, 2016, the hearing examiner recommended dismissal of Rogers' protest.

{¶ 8} While the administrative action was pending, before the hearing examiner issued her recommendation of dismissal, both Brondes and Rogers filed declaratory judgment actions in common pleas court. Brondes filed its complaint against Rogers in this case on December 5, 2015. Rogers filed a complaint against Ford and the board in the Franklin County Court of Common Pleas on March 3, 2016. Brondes sought a declaratory judgment (1) interpreting "within one mile" using the straight-line approach adopted by the hearing examiner; (2) holding that the Arrowhead location is within one mile from the Reynolds Road location; (3) declaring that Rogers has no protest right under R.C. 4517.50; and (4) holding that R.C. 4517.50(B)—prohibiting relocation—is inapplicable to Brondes' proposed relocation.

{¶ 9} Rogers moved to dismiss Brondes' complaint for lack of subject-matter jurisdiction, arguing (1) there exists no justiciable case or controversy between the parties, (2) Brondes failed to join an indispensable party—i.e., Ford, (3) Brondes failed to exhaust administrative remedies, and (4) even if the common pleas court and the board have concurrent jurisdiction, the jurisdictional priority rule bars the action because a matter involving the same subject matter was first-filed with the board.

{¶ 10} Shortly after Rogers filed its motion to dismiss, Brondes moved for summary judgment. It argued that a real, justiciable controversy exists because

4.

interpretation of "within one mile" is needed to preserve the parties' rights. Moreover, it claimed, relief cannot come from the board because Ford did not provide notice to Rogers, a jurisdictional prerequisite to Rogers' right to protest Brondes' proposed relocation. It urged the court to interpret "within one mile" to mean the distance between the closest point of the existing location to the closest point of the proposed new location.

{¶ 11} In response, Rogers offered the affidavit of a purported expert who averred that a centroid-to-centroid measurement must be used in calculating the distance. Rogers insisted that using that measure, the locations were not within one mile of each other.

{¶ 12} In a nunc pro tunc judgment journalized on August 5, 2016, the trial court denied Rogers' motion to dismiss. Relying on *M6 Motors, Inc. v. Nissan of North Olmsted*, LLC, 2014-Ohio-2537, 14 N.E.3d 1054 (8th Dist.), the court found that resolution of what is meant by "within one mile" is necessary to prevent Rogers from interfering with Brondes' effort to relocate. It concluded that no administrative remedy was available to Brondes because under the plain language of R.C. 4517.50(C)(1), the notice requirement is inapplicable to relocations within one mile, and R.C. 4517.50 governs disputes between a manufacturer and dealer; it does not govern disputes between two dealers. Finally, it found that while Ford has a practical interest in the outcome of the court's interpretation of "within one mile," it does not have a legally-protectable interest, thus it is not a necessary and indispensable party.

{¶ 13} The court issued a nunc pro tunc judgment journalized on September 1, 2016, granting Brondes' motion for summary judgment. It held that the distance between

5.

locations is to be measured in a straight line, from nearest point to nearest point. Again, it was guided by *M6 Motors*. It found that the Arrowhead location is within one mile of Brondes' Reynolds Road location.

{¶ 14} Rogers appealed the trial court judgments, and it assigns the following errors for our review:

> **ASSIGNMENT OF NO. ERROR I**: The trial court erred as a matter of law and abused its discretion by failing to dismiss the declaratory judgment complaint because there was no justiciable controversy and a declaratory judgment ruling would not terminate the uncertainty.

> **ASSIGNMENT OF NO. ERROR II**: The trial court erred as a matter of law interpreting "within one mile" in R.C. 4517.50(C)(1).

## II. Law and Analysis

{¶ 15} In its first assignment of error, Rogers contends that the trial court erred in denying its motion to dismiss Brondes' declaratory judgment action. In its second assignment of error, it claims that the trial court erred in its interpretation of "within one mile."

{¶ 16} Under R.C. 2721.03, "any person * * * whose rights, status, or other legal relations are affected by a * * * statute * * * may have determined any question of construction or validity arising under the * * * statute * * * and obtain a declaration of rights, status, or other legal relations under it." To that end, declaratory relief is available to that person if he can show (1) that a real controversy exists between the parties, (2) the

6.

controversy is justiciable, and (3) speedy relief is necessary to preserve the parties' rights. (Citations omitted.)  *Moore v. City of Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 49.

{¶ 17} Courts, however, are not authorized to issue advisory opinions to prevent future disputes.  *Reinbolt v. Nat'l Fire Ins. Co.*, 158 Ohio App.3d 453, 2004-Ohio-4845, 816 N.E.2d 1083, ¶ 13 (6th Dist.).  Thus, a trial court may dismiss a complaint for declaratory relief if no real, justiciable controversy exists, or if the declaratory judgment will not terminate the uncertainty or controversy.  *Id.*  "A real, justiciable controversy is a 'genuine dispute between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Reeves v. Chief of Police*, 6th Dist. Erie No. E-14-124, 2015-Ohio-3075, ¶ 6, quoting *Wagner v. Cleveland*, 62 Ohio App.3d 8, 13, 574 N.E.2d 533 (8th Dist.1988).  Resolution of that controversy must confer certain rights or status upon the litigants.  *Id.*, citing *J.C. Penney Cas. Ins. Co. v. Professionals Ins. Co. of Ohio*, 67 Ohio App.3d 167, 172, 586 N.E.2d 222 (6th Dist.1990).

{¶ 18} In reviewing a decision on a motion to dismiss a declaratory-judgment action as not justiciable, we apply an abuse-of-discretion standard to the trial court's holding regarding justiciability.  *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 13.  But once a trial court determines that a matter is appropriate for declaratory judgment, we review its holdings regarding questions of law on a de novo basis.  *Id.*

7.

{¶ 19} In denying Rogers' motion to dismiss and in granting Brondes' motion for summary judgment, the trial court relied heavily on the decision of the Eighth District in *M6 Motors*, 2014-Ohio-2537, 14 N.E.3d 1054. We, therefore, begin by discussing that decision.

### A. *M6 Motors*

{¶ 20} In *M6 Motors,* a dispute arose between two Nissan dealers when one dealer ("Middleburg Heights") sought to relocate its recently-acquired dealership to a new site 7.44 miles from another Nissan dealer ("North Olmsted"). Middleburg Heights' previous location was on Pearl Road, 7.43 miles away from the North Olmsted dealership. Nissan advised North Olmsted that it had approved the relocation, and North Olmsted filed a protest with the board. Nissan moved to dismiss the protest on the ground that it had no duty to provide notice of Middleburg Heights' proposed relocation because it is further from the protesting dealership that the previous site, an exception contained in R.C. 4517.50(C)(3). Accordingly, it claimed, North Olmsted had no right to protest the relocation.

{¶ 21} The hearing examiner denied Nissan's motion, finding that North Olmsted had standing and that the issue of the distance between the dealerships was an issue of fact. He determined that the matter should proceed to a good cause hearing.

{¶ 22} Due to the delay in resolving North Olmsted's protest, Middleburg Heights became unable to acquire the protest site. It, therefore, withdrew its request to relocate. A new site became available, however, 7.61 miles from the North Olmsted dealership.

8.

Middleburg Heights sought permission from Nissan to relocate to that site. Nissan refused Middleburg Heights' request due to the anticipated protest it would generate from North Olmsted and the delay that would result from the proceedings arising from that protest.

{¶ 23} Middleburg Heights filed a declaratory judgment action against North Olmsted in the court of common pleas in Cuyahoga County, asking the trial court to declare the method for determining whether a site is "further," as used in R.C. 4517.50(C)(3), and to declare that Middleburg Heights' proposed site is, in fact, further from the North Olmsted site than was the original Pearl Road location. It argued that the court should employ a straight-line, "as the crow flies" method to determine the distance between the locations.

{¶ 24} North Olmsted moved to dismiss Middleburg Heights' complaint, arguing that (1) there existed no controversy between the parties, (2) Middleburg Heights failed to exhaust administrative remedies, and (3) it failed to join Nissan, which North Olmsted claimed was a necessary party. Middleburg Heights responded with a motion for summary judgment.

{¶ 25} The trial court denied North Olmsted's motion to dismiss. It found that there was a justiciable controversy between the two dealerships that the legislative scheme did not contemplate the board having jurisdiction to review. It also found that Nissan was not a necessary party because North Olmsted sought no relief from Nissan and Nissan had no legally-protected rights relating to Middleburg Heights' complaint. It

9.

ultimately conducted a hearing on the issue of how to calculate if a location is "further" and found in favor of Middleburg Heights. North Olmsted appealed.

{¶ 26} On appeal, North Olmsted argued first that the trial court lacked jurisdiction, and second that the trial court erred in its interpretation of "further." It also argued that Middleburg Heights failed to exhaust administrative remedies and that the board had exclusive jurisdiction.

{¶ 27} The Eighth District began by addressing the issue of standing. It explained that standing is required in order to have a justiciable case. It described a justiciable case as one in which there is an actual controversy between the parties. It explained that "in order for a justiciable question to exist, the 'threat' to a party's position 'must be actual and genuine and not merely possible or remote.'" (Citations omitted.) *Id.* at ¶ 17.

{¶ 28} North Olmsted argued that it and Middleburg Heights had no justiciable controversy because Nissan denied Middleburg Heights' request to relocate, and a threat to file a protest is not a present dispute, but merely a possible controversy contingent on events that have not yet occurred. Middleburg Heights responded that Nissan denied its relocation request because of North Olmsted's threat to protest, that threat is continuing, and the court's interpretation of "further" would resolve the matter.

{¶ 29} The Eighth District acknowledged that Nissan had made clear that it denied Middleburg Heights' request because of North Olmsted's threatened protest and the unsettled matter of whether the proposed location is further from North Olmsted's location than the existing dealership. As such, it stated, Middleburg Heights was

effectively prevented from relocating, and there was an actual, present controversy. It also found that the controversy could not be resolved without interpretation of "further." It clarified that the issue for the court's resolution was not whether Middleburg Heights could move to the new location, but rather the interpretation of the statute which, it concluded, was a proper basis for declaratory judgment. Without interpretation, it noted, Middleburg Heights could not take the very first step needed to relocate. It concluded, therefore, that there existed a justiciable controversy.

{¶ 30} Turning to whether Nissan was an indispensable party to the declaratory judgment action, the Eighth District found that it was not. While it acknowledged that Nissan has a practical interest, it found that its interest was not legally-protectable and that the trial court's judgment would not bind Nissan. It concluded, therefore, that Nissan was not an indispensable party to the declaratory judgment action.

{¶ 31} Finally, as to the exhaustion of administrative remedies, the Eighth District found that there were no available administrative remedies because the board's jurisdiction is limited to relocation disputes, whereas the declaratory judgment action sought interpretation of a statute. Moreover, it recognized, R.C. 4517.50 governs disputes between dealers and manufacturers—not disputes between dealers. And the current relocation dispute was not currently the subject of an administrative proceeding. It found, therefore, that Middleburg Heights had no administrative remedy.

11.

## B. Denial of Rogers' Motion to Dismiss

{¶ 32} For the most part, the parties' arguments and the trial court's rationale in support of its judgment on Rogers' motion to dismiss closely mirror those set forth in *M6 Motors*, 2014-Ohio-2537, 14 N.E.3d 1054. In support of its first assignment of error, Rogers sets forth four main arguments.

{¶ 33} First, Rogers claims that Brondes cannot establish that speedy relief is necessary as needed to prevail in a declaratory judgment action. It explains that Brondes alleged in its complaint that a decision from the court was needed by January 29, 2016, so that it could close on the purchase of the Arrowhead property by February 8, 2016. Because the trial court did not rule until August of 2016—six months later—Rogers maintains that Brondes could no longer establish the required speedy-relief element. As such, it claims, no justiciable controversy exists.

{¶ 34} Second, Rogers argues that no actual controversy exists because a dispute under the Ohio Motor Vehicles Dealer Act is not possible as between Rogers and Brondes because R.C. 4517.50 governs the relationship between only the dealer and manufacturer—not a dispute between two dealers. Thus, there can never be a case or controversy as between the two of them under the statute. It also insists that uncertainty would remain because the protest between Rogers and Ford would still continue, and the trial court's decision would not bind Ford. As such, Rogers maintains, Brondes' complaint sought merely an advisory opinion from the court to circumvent the protest pending between Rogers and Ford.

12.

{¶ 35} Third, Rogers argues that the Ohio General Assembly delegated to the board the exclusive authority to determine relocation protests. It maintains that this authority extends to interpreting the "within one mile" provision contained in R.C. 4517.50(C)(1). As such, it contends, the trial court lacks jurisdiction.

{¶ 36} Finally, Rogers argues that Brondes' complaint improperly seeks to circumvent the jurisdiction of the board given that an administrative proceeding is pending before the board concerning the exact same legal issue. It insists that that controversy exists as between Rogers and Ford; not between Rogers and Brondes.

{¶ 37} In response, Brondes counters that the trial court recognized the need for speedy relief as it advanced the case on its docket, and it disagrees that the passage of time defeats this element of its claim. It claims that Rogers had no right to file its protest with the board because Ford gave no notice under R.C. 4517.50(A), therefore, the board lacks any authority here, let alone exclusive jurisdiction. It maintains that Rogers' conduct in filing an action in Franklin County demonstrates its understanding that the board does not have exclusive jurisdiction.

{¶ 38} Brondes also contends that it was not required to exhaust administrative remedies because no such remedy was available to it. It maintains that filing its declaratory-judgment action was not, therefore, an attempt to circumvent the board. And it urges that the common pleas court was free to exercise its general jurisdiction over the dispute. It contends that the trial court's interpretation of "within one mile" will terminate uncertainty despite the fact that Ford is not a party to the action.

13.

**{¶ 39}** The board is a creature of statute and is constrained to follow the statutorily-mandated process set forth in R.C. 4517.50. *Jack Matia Chevrolet, Inc. v. GMC*, 10th Dist. Franklin No. 06AP-360, 2007-Ohio-420, ¶ 16. This process allows a franchisee to file a protest against the franchisor after receiving notice of the franchisor's intent to relocate a dealer within the relevant market area. *Id.* at ¶ 14. The process does not authorize the board to review a protest where the franchisor has not provided notice. *Id.* at ¶ 15. And it does not authorize the board to resolve a dispute between two dealers. *M6 Motors*, 2014-Ohio-2537, 14 N.E.3d 1054, at ¶ 43. In fact, there can be no dispute as between two dealers under R.C. 4517.50. *Id.* Thus, we agree with Brondes that it had no administrative remedy available to exhaust.

**{¶ 40}** But this also leads us to the conclusion that Brondes' declaratory-judgment action—which asks us to interpret language contained in R.C. 4517.50(C)(1)—must fail for lack of a real, justiciable controversy. Ford has approved Brondes' request to relocate. Although Ford's approval is being challenged by Rogers, that dispute is solely between Ford and Rogers; it does not give rise to a genuine dispute between Brondes and Rogers. Because Brondes and Rogers have no genuine dispute, there exists no real, justiciable controversy.

**{¶ 41}** Furthermore, a decision from this court determining the method that should be employed to calculate "within one mile" may provide legal precedent in some cases and persuasive authority in others. But it would not bind Ford or the board. As such, uncertainty would remain.

14.

**{¶ 42}** This lack of a justiciable controversy and failure to terminate uncertainty require us to conclude that declaratory relief is unavailable here. We are aware that the *M6 Motors* court concluded differently. But *M6 Motors*, 2014-Ohio-2537, 14 N.E.3d 1054, is factually distinguishable from the present case.

**{¶ 43}** In *M6 Motors,* the manufacturer, Nissan, refused Middleburg Heights' request to relocate because it knew that North Olmsted would protest and it was unclear how the distance between dealerships would be calculated. Here, however, Ford *approved* Brondes' request. Right or wrong, Rogers' protest of that approval has already been filed with the board, and, in fact, a recommendation of dismissal has been issued in Brondes' favor. In other words, the matter is on a path to resolution and Brondes is not "effectively prevented from relocating its dealership," in the same way that Middleburg Heights was. *Id.* at ¶ 30. This distinction leads us to conclude that there exists no real, justiciable controversy, and the trial court, therefore, abused its discretion in denying Rogers' motion to dismiss Brondes' complaint for declaratory judgment.

**{¶ 44}** Accordingly, we find Rogers' first assignment of error well-taken. Given our conclusion, we need not proceed to Rogers' second assignment of error.

### III. Conclusion

**{¶ 45}** We agree with Rogers that no justiciable controversy exists, therefore, its motion to dismiss was improperly denied. We find Rogers' first assignment of error

well-taken, and we decline to reach its second assignment of error.  We reverse the

August 5, 2016, judgment of the Lucas County Court of Common Pleas.  The costs of

this appeal are assessed to Brondes under App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                    _____

                                               JUDGE

James D. Jensen, P.J.

                              _____

Christine E. Mayle, J.
CONCUR.

                                                 JUDGE

                              _____

                                                 JUDGE

16.